Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

FILED
CLERK, U.S. DISTRICT COURT

JAN 2 8 2008

CENTRAL DISTRICT OF CALIFORNIA
BY                              DEPUTY

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

MANUEL MOLINA,                          ) ED CV 07-952-AHS (SH)
                                        )
                        Petitioner,     ) ORDER ADOPTING THE
                                        ) REPORT AND RECOMMENDATION
        v.                              ) OF UNITED STATES MAGISTRATE
                                        ) JUDGE
JOHN F. SALAZAR,                        )
Acting Warden,                          )
                                        )
                        Respondent.     )
_____)

        Pursuant to 28 U.S.C. Section 636(b)(1)(C), the Court has reviewed the
Petition, all of the records and files herein and the attached Report and
Recommendation of the United States Magistrate Judge, and has made a de novo
determination of the Report and Recommendation. The Court concurs with and
adopts the conclusions of the Magistrate Judge.

        IT IS ORDERED that the Petition filed herein is dismissed with prejudice.

1

1    IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order,

2  the Magistrate Judge's  Report and Recommendation and the Judgment herein by

3  the United States mail on petitioner and counsel for respondent.

4    LET JUDGMENT BE ENTERED ACCORDINGLY.

5  DATED: _____ JAN 2 8 2008

6

7

8    _____

9    ALICEMARIE H. STOTLER
     CHIEF UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9       UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA -  EASTERN DIVISION

11
12
13
14

15  MANUEL MOLINA,                    )  No. ED CV 07-952-AHS (SH)
                                      )
16              Petitioner,           )  REPORT AND RECOMMENDATION OF
                                      )  UNITED STATES MAGISTRATE JUDGE
17       v.                           )
                                      )
18  JOHN F. SALAZAR,                  )
    Acting Warden,                    )
19                                    )
                Respondent.           )
20  _____ )

21       This Report and Recommendation is submitted to the Honorable Alicemarie H.

22  Stotler, Chief United States District Judge, pursuant to 28 U.S.C. § 636 and General

23  Order 194 of the United States District Court for the Central District of California.  For

24  reasons stated below, the petition for habeas corpus relief should be denied.

25

26                        I.  **PROCEEDINGS**

27  Petitioner, a prisoner in the custody of the California Department of Corrections,

28

1 challenges a 2006 decision of the Board of Parole Hearings ("BPH")[1] finding him

2 unsuitable for parole.

3 ~~On July 30, 2007, petitioner (through counsel) filed a Petition for Writ of Habeas~~

4 Corpus by a Person in State Custody ("Petition") herein.  Respondent filed an Answer to

5 the Petition on August 27, 2007, and a Return to the Petition on September 26, 2007.

6 Petitioner filed a Traverse on October 15, 2007.

7      Thus, this matter now is ready for decision.

8

9 ## II.  PROCEDURAL HISTORY

10      On December 12, 1991, petitioner was convicted (pursuant to a guilty plea) of one

11 count of second degree murder.  (See respondent's Notice of Lodgment ("Lodgment")

12 No. 1; Petition, Exhibit D at 2).  On January 24, 1992, petitioner was sentenced to state

13 prison for fifteen years to life, and the remaining counts were dismissed.  (See Lodgment

14 No. 1; Petition at 2, Exhibit D).

15      Petitioner's minimum eligible parole date was September 25, 2000.  (See

16 Lodgment No. 3 at 1).  On May 23, 2006, after petitioner had served approximately

17 fourteen years, the BPH conducted a subsequent parole suitability hearing.[2]  After

18 considering the matter,[3] the BPH found petitioner unsuitable for parole, as follows:

19

20     [1] The Board of Parole Hearings replaced the Board of Prison Terms as of July 1,
2005.  Cal. Penal Code § 5075(a).

21

22     [2]     Petitioner had received two prior parole suitability hearings.  (See Petition
Attachment at 4).

23     [3]     The BPH considered the following statement concerning the facts of the
crime (taken from a December 2005 report):

24     "On August the 16th 1990, at 13975 Bolino Rose Street (phonetic) Lorino
Valley (phonetic) where Ricardo and Jesus Luga (phonetic) and their families reside,

25 defendant Manuel Molina and his crime partners Jose Mesa (phonetic) and Alejandro
Marquet Quevas (phonetic) entered the house posing as peace officers and robbed the

26 Lugo family of several items of personal property and cash.  On August 26th, 1990, at
approximately 3:30 a.m. the same three men returned to the same residence and

27 attempted to rob the same family including children using the same method of operation.
This time Ricardo Luga armed with a hand gun was in the kitchen when two suspects

28                                                 (continued...)

1  "... The panel reviewed all information received from the public and relied

2  on the following circumstances in concluding that you're not yet suitable for

3  parole, Mr. Molina and that you would pose an unreasonable risk of danger to

4  society or a threat to public safety if released from prison. The reasons are

5  particularly the commitment offense, multiple victims were attacked. Your crime

6  partners were injured, in fact one was killed. The offense was carried out in a

7  manner which demonstrates an exceptionally callous disregard for human

8  suffering, in that you went to the home to commit a second armed home invasion

9  robbery, and at the home where children were located. Conclusions are drawn

10

11      [3] (...continued)
12  later identified as Jose Mesa and Alejandro Quevas were attempting to tear off the
   kitchen window screen. A gun battle ensued resulting in Jose Mesa being fatally
13  wounded and Ricardo Luga in serious condition. After the gun battle, the transgressors
   fled with one of them leaving a trail of blood from a rear window to where a late model
14  Ford Bronco was parked. Police gave chase and the high speed chase ended when the
   driver Fernandez lost control and crashed into a stop sign. Fernandez was shot several
15  times by police officers when he made an aggressive motion upon exiting the vehicle.
   Molina was transported for medical attention along with Ricardo Luga, who also was
16  wounded in the gun battle. Quevas was booked into Riverside County Jail. It was noted
   that the victim Jose Mesa died of a single gunshot wound to the chest. I assume that was
17  the suspect in the armed robber than died. He doesn't appear to have been a victim of
   anything to me. Also noted was a shogun that Mr. Mesa was armed with, which was
18  found along with a security badge was in possess – was in his possession." (Lodgment
   No. 3 at 12-14)

19      The BPH also considered petitioner's version of the crime (which had changed
20  from his version of the crime contained in the December 2005 report):
      "On August 26th, 1990, Mr. Mesa and myself, Manuel Landeros Molina,
21  drank a few beers together. He then told me that we were going to a place where we
   would work. We then left and it was very late. Soon after I fell asleep. I don't know
22  where we at. I soon found out where we were because he woke me up by touching me
   on the shoulder. He then asked me to go with him to rob the Lugo's. This is the same
23  residence we had robbed before. I realized that why were going to commit the same
   actions we had before. I then made a decision to follow him. Mr. Mesa then knocked on
24  the door that is on the rear of the house. Mr. Mesa once again knocked on the door and
   no one answered. We then proceeded to one of the windows. That's when someone
25  within the house began to fire a revolver. Then that's when Mr. Mesa returned fire with
   his gun. Mr. Mesa then took off running because of the melee that was ensuing. I accept
26  all that has happened, and I am guilty and very remorseful. Mr. Fernandez drove me a
   until he hit a post. That is when I ran out of the black Bronco. Soon after I ended up in
27  the hospital. I was shot in the back during the melee, and this is how it occurred. Again,
   I am remorseful for my actions." (Lodgment No. 3 at 14-16).

28

3

1   from the statement of facts wherein that is described.  Prisoner and crime partner
2   went to a private residence to commit a home invasion armed robbery for the
3   second time at the same location.  Children were in the home.  Previous record
4   prior to the commitment offense, again, a short time prior you had committed an
5   armed robbery at exactly the same residence.  You have an escalating pattern of
6   criminal conduct, in that you were convicted for smuggling illegal aliens into the
7   country and for disturbing the peace.  You failed to profit from society's attempts
8   to correct your criminality by your convictions and sentenced to the county jail.
9   Your institutional behavior is that you failed to upgrade sufficiently as --
10  educationally as recommended by the last parole hearing Panel.  Your parole plans
11  seem to be adequate in Mexico; however, the Panel cannot put a lot of support or
12  confidence in those, in that you've been deported from this country twice and on
13  each time you've simply returned to the country illegally.  The Panel takes note
14  that the District Attorney's office was represented by video and opposed the
15  parole.  The Panel makes the following findings: The prisoner needs to -- needs
16  continued therapy in order to face, discuss, understand, and cope with stress in a
17  nondestructive manner.  Until progress is made, the prisoner continues to be
18  unpredictable and a threat to others.  Nevertheless, the prisoner should be
19  commended for his remaining disciplinary free.  I didn't take into consideration
20  two 115s.  The one was as pointed out by counsel for the inmate to be very old,
21  1993, I believe it was, and of no particular interest at this point.  And another one,
22  a strike among inmates wherein a general opinion among those is that a prisoner
23  just about had to be involved for fear of being severely injured by other inmates
24  who were on strike.  Additionally, the inmate is commended for participation in
25  therapy and self-help activities.  I note a long list of chronos outlining therapy and
26  self-help.  I count 45 to be exact.  They involve participation in AA, Narcotics
27  Anonymous, and the list is extensive.  The last chrono is a certificate of
28  participation in NA for 10 consecutive years.  The denial is for two years.  In a

4

1    separate decision, the Panel finds that it was not reasonable to expect that parole
2    would be granted at a hearing during the following two years.  The reasons are
3    multiple victims were attacked.  His crime partner and he were shot.  He was shot
4    twice, very injured.  One crime partner was killed.  The offense was carried out in
5    a dispassionate calculated murder (sic), a (sic) armed robbery at a home where
6    children were present for the second time in a very short period of time.  The
7    prisoner has an unstable social history, in that he was in the country illegally at the
8    time of the offense.  He had previously been deported twice and had been
9    convicted of smuggling illegal aliens.  Psychological report by Dr. Orhling dated
10   November 18th, '05, indicates that alcohol dependence in institutional remission;
11   other than that, it's relatively supportive.  However, all of the comments made to
12   the doctor were by the inmate.  The Panel recommends that the prisoner remain
13   disciplinary free, that you continue to upgrade educationally."  (Lodgment No. 3 at
14   61-64).

15

16        On or about December 4, 2006, petitioner (through counsel) filed a petition for
17   writ of habeas corpus in the Riverside County Superior Court, wherein he alleged the
18   same claims as the claims alleged in the Petition herein.  (See Lodgment No. 4).  On
19   December 26, 2006, the Riverside County Superior Court summarily denied that habeas
20   petition without citation of authority.  (See Lodgment No. 5).
21        On or about January 17, 2007, petitioner (through counsel) filed a petition for writ
22   of habeas corpus in the California Court of Appeal, alleging the same claims.  (See
23   Lodgment No. 6).  On January 31, 2007, the California Court of Appeal summarily
24   denied that habeas petition without citation of authority.  (See Lodgment No. 7).
25        On or about February 26, 2007, petitioner (through counsel) filed a Petition for
26   Review in the California Supreme Court, wherein he alleged the same claims.  (See
27   Lodgment No. 8).  On May 9, 2007, the California Supreme Court summarily denied the
28   Petition for Review without citation of authority.  (See Lodgment No. 9).

### III. **PETITIONER'S CLAIMS**

1. The BPH's decision that petitioner was unsuitable for parole was based on findings that were arbitrary, unsupported by evidence, inherent in second degree murders, and/or based on immutable outdated factors, in violation of petitioner's right to due process. (Petition at 9-16; Traverse at 7-14).

2. The BPH's decision that petitioner was unsuitable for parole was based on factors that had no nexus to petitioner's current risk to public safety, in violation of petitioner's right to due process. (Petition at 17-19; Traverse at 7-14).

3. The BPH's decision that petitioner was unsuitable for parole was based on immutable factors of his commitment offense in violation of petitioner's right to due process. (Petition at 20-24; Traverse at 7-14).

4. Petitioner's constitutional claims should not be adjudicated using the "some evidence" standard of review. (Petition at 24-26; Traverse at 7-14).

5. The BPH's decision that petitioner was unsuitable for parole was based on an anti-parole bias, in violation of petitioner's right to due process and petitioner's liberty interest in parole. (Petition at 27-28; Traverse at 15-16).

6. The BPH's decision to defer petitioner's next parole hearing for two years was not supported by evidence that petitioner could not be found suitable for parole in one year, in violation of petitioner's right to due process. (Petition at 29-30; Traverse at 15).

### IV. **STANDARD OF REVIEW**

The standard of review applicable to petitioner's claims herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

6

1   adjudication of the claim--(1) resulted in a decision that was contrary to, or
2   involved an unreasonable application of, clearly established Federal law, as
3   determined by the Supreme Court of the United States; or (2) resulted in a decision
4   that was based on an unreasonable determination of the facts in light of the
5   evidence presented in the State court proceedings."
6
7        Moreover, a state court factual determination must be presumed correct unless
8   rebutted by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1)(as amended).
9        Under the AEDPA, the term "clearly established Federal law" means "the
10  governing legal principle or principles set forth by the Supreme Court at the time the
11  state court renders its decision."  Lockyer v. Andrade, 538 U.S. 63, 71-72, 123 S.Ct.
12  1166, 155 L.Ed.2d 144 (2003); see also Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct.
13  1495, 146 L.Ed.2d 389 (2000) ("clearly established Federal law" consists of holdings,
14  not dicta, of Supreme Court decisions "as of the time of the relevant state-court
15  decision").  However, federal circuit law may still be persuasive authority in identifying
16  "clearly established" Supreme Court law or in deciding when a state court unreasonably
17  applied Supreme Court law.  See Tran v. Lindsey, 212 F.3d 1143, 1154 (9th Cir.), cert.
18  denied, 531 U.S. 944 (2000).
19        Although a particular state court decision may be both "contrary to" and "an
20  unreasonable application of" controlling Supreme Court law, the two phrases have
21  distinct meanings.  Williams, supra, 529 U.S. at 391, 413. A state court decision is
22  "contrary to" clearly established federal law if the decision applies a rule that contradicts
23  the governing Supreme Court law or reaches a result that differs from a result the
24  Supreme Court reached on "materially indistinguishable" facts. Early v. Packer, 537
25  U.S. 3, 8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam); Williams, supra, 529 U.S.
26  at 405-06.  When a state court decision adjudicating a claim is contrary to controlling
27  Supreme Court law, the reviewing federal habeas court is "unconstrained by
28  § 2254(d)(1)."  Williams, supra, 529 U.S. at 406.  However, the state court need not cite

7

1    the controlling Supreme Court cases, "so long as neither the reasoning nor the result of

2    the state-court decision contradicts them." Early, supra.

3              A state court decision involves an "unreasonable application" of clearly

4    established federal law if "the state court identifies the correct governing legal principle

5    from [Supreme Court] decisions but unreasonably applies that principle to the facts of

6    the prisoner's case." Williams, supra, 529 U.S. at 413; Woodford v. Visciotti, 537 U.S.

7    19, 24-27, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) (per curiam).  A federal habeas court

8    may not overrule a state court decision based on the federal court's independent

9    determination that the state court's application of governing law was incorrect, erroneous

10   or even "clear error." Lockyer, supra, 538 U.S. at 75.  Rather, a decision may be rejected

11   only if the state court's application of Supreme Court law was "objectively

12   unreasonable." Id.; Woodford, supra; Williams, supra.

13           When the state court has not provided a reasoned explanation for its denial of the

14   petitioner's claims, a federal court has no basis other than the record for knowing

15   whether the state court correctly identified the governing legal principle or was

16   extending the principle into a new context. See Delgado v. Lewis, 223 F.3d 976, 981-82

17   (9th Cir. 2000).  Thus, "[f]ederal habeas review is not de novo when the state court does

18   not supply reasoning for its decision, but an independent review of the record is required

19   to determine whether the state court clearly erred in its application of controlling federal

20   law. . . . Only by that examination may we determine whether the state court's decision

21   was objectively reasonable." Id. at 982; see also Sass v. California Board of Prison

22   Terms, 461 F.3d 1123, 1127 (9th Cir. 2006); Allen v. Ornoski, 435 F.3d 946, 955 (9th

23   Cir.)("[T]he independent review undertaken under Delgado is not the equivalent of de

24   novo review, but rather is a style of review which views the state court decision through

25   the objectively reasonable lens ground by Williams."), cert. denied, 546 U.S. 1136

26   (2006).

27   ///

28   ///

# V. **DISCUSSION**

**A.**   **Habeas relief is not warranted with respect to the first through fifth claims alleged in the Petition.**

In the first through fifth claims alleged in the Petition, petitioner challenges on federal constitutional grounds the BPH's determination that he was unsuitable for parole. Specifically, petitioner claims that the BPH's parole unsuitability finding was arbitrary and unsupported by evidence, was based solely on immutable factors of petitioner's commitment offense, relied on factors which did not have any nexus to petitioner's current risk to public safety, and was based on an anti-parole bias. (See Petition at 9-28; Traverse at 7-16).

1.   Clearly established federal law

A California prisoner with a sentence of a term of years to life with the possibility of parole has a protected liberty interest in release on parole and therefore a right to due process in his or her parole suitability proceedings. See Irons v. Carey, 479 F.3d 658, 662 (9th Cir. 2007), amended by 2007 WL 2027359, *3 (9th Cir.); Sass v. California Board of Prison Terms, supra, 461 F.3d at 1127-28; see also Cal. Penal Code § 3041(b); Board of Pardons v. Allen, 482 U.S. 369, 377-78, 107 S.Ct. 2415, 96 L.Ed.2d 303 (1987); Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 688 (1979).

A state parole board's suitability decision satisfies the requirements of due process when "some evidence" supports the decision. Irons, supra (citing Sass, supra [adopting the "some evidence" standard outlined in Superintendent v. Hill, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985)]); Biggs v. Terhune, 334 F.3d 910, 915 (9th Cir. 2003); McQuillion v. Duncan, 306 F.3d 895, 904 (9th Cir. 2002).[4] "When we assess whether a

---

[4]   The Ninth Circuit has rejected petitioner's and respondent's assertions that the "some evidence" test does not apply to parole suitability cases reviewed under the
(continued...)

9

1  state parole board's suitability determination was supported by 'some evidence' in a

2  habeas case, our analysis is framed by the statutes and regulations governing parole

3  suitability determinations in the relevant state." Irons, supra (citing Biggs, supra). "To

4  determine whether the some evidence standard is met 'does not require examination of

5  the entire record, independent assessment of the credibility of witnesses, or weighing of

6  the evidence. Instead, the relevant question is whether there is any evidence in the

7  record that could support the conclusion reached' by the parole board." Sass, supra, 461

8  F.3d at 1128 (quoting Superintendent, supra, 472 U.S. at 455-56). The "some evidence

9  standard is minimal, and assures that 'the record is not so devoid of evidence that the

10  findings of the . . . Board were without support or otherwise arbitrary.'" Id. at 1129

11  (quoting Superintendent, supra, 472 U.S. at 457).

12      Although reliance on the nature of a prisoner's offense may satisfy the "some

13  evidence" requirement, continued reliance on an unchanging factor such as the

14  circumstances of the offense could result in a due process violation if the prisoner

15  continually demonstrates exemplary behavior and evidence of rehabilitation. Biggs,

16  supra, 334 F.3d at 916; see also Irons, supra, 2007 WL 2027359 at *6; but see Sass,

17  supra (stating that the Biggs analysis was improper under the AEDPA and beyond the

18  scope of the dispute before the court, and holding that the evidence of the gravity of the

19  petitioner's commitment offenses in combination with his prior offenses provided "some

20  evidence" to support the denial of parole); Irons, supra, 2007 WL 2027359 at *5

21  (holding that the cruel or vicious nature of the petitioner's commitment offense, standing

22  alone, constituted "some evidence" to support the denial of parole).

23  ///

24  ///

25

26  _____

27  [4] (...continued)
    AEDPA. See Sass, supra, 461 F.3d at 1128-29 ("We therefore reject the state's
    contention that the some evidence standard is not clearly established in the parole

28  context.")

2. <u>California standards regarding parole for murderers</u>

Petitioner was convicted of second degree murder. California uses indeterminate sentences for most non-capital murderers, with the term being life imprisonment and parole eligibility after a minimum number of years prescribed by statute. <u>See</u> Cal. Penal Code § 3046. A first degree murder conviction yields a base term of twenty-five years to life, and a second degree murder conviction yields a base term of fifteen years to life imprisonment. <u>See</u> Cal. Penal Code § 190; <u>In re Dannenberg</u>, 34 Cal.4th 1061, 1078, 104 P.3d 783, 23 Cal.Rptr.3d 417 (2005). Under California's parole scheme described below, a release date normally must be set after the minimum eligibility date unless various factors exist, but the "unless" qualifier is substantial.

California Penal Code Section 3041(a) provides that a BPH panel meets with an inmate one year before the prisoner's minimum eligible release date "and shall normally set a parole release date. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates." Under Cal. Penal Code § 3041(b), the BPH panel "shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting."

Implementing regulations for this statute state that:

"A parole date shall be denied if the prisoner is found unsuitable for parole under [15 Cal. Code Regs.] Section 2402(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to threat to the public."

11

1 | 15 Cal. Code Regs. § 2401.[5]

2

3    ### 3.    Findings and conclusion

4    The BPH panel found petitioner unsuitable for parole based on: (a) the nature of

5 the commitment offense (which demonstrated "an exceptionally callous disregard for

6 human suffering") -- multiple victims were attacked; the offense was committed at the

7 same location of a prior robbery committed a short time before; and the offense was

8 committed at a location where there were vulnerable people (children); (b) petitioner's

9 prior offenses -- a prior robbery at the same location; prior convictions for smuggling

10 illegal aliens into the country and for disturbing the peace; an escalating pattern of

11 criminal conduct; and failure to correct his criminality after his prior incarceration; (c)

12 petitioner's negative institutional behavior -- his failure to sufficiently upgrade his

13 education as had been recommended by the last parole hearing panel; and (d) problems

14 with petitioner's parole plans in Mexico -- petitioner had been deported twice, and each

15 time had returned to this country illegally.  (See Lodgment No. 3 at 61-62).

16    Here, the callous nature of petitioner's commitment offense, in combination with

17 petitioner's prior offenses and problems with his parole plans, constituted "some

18 evidence" to support the BPH's determination that petitioner was unsuitable for parole

19

20    [5]    The listed factors tending to show unsuitability for parole are: the nature of
the commitment offense, i.e., whether the prisoner committed the offense in "an
21 especially heinous, atrocious or cruel manner;" the prisoner has a previous record of
violence; the prisoner has an unstable social history; the prisoner previously engaged in a
22 sadistic sexual offense; the prisoner has a lengthy history of severe mental problems
related to the offense; and negative institutional behavior.  15 Cal. Code Regs. § 2402(c).
23    The listed factors tending to show suitability for parole are: the absence of a
juvenile record; stable social history; signs of remorse; a stressful motivation for the
24 crime; whether the prisoner suffered from battered woman's syndrome; lack of a criminal
history; the present age reduces the probability of recidivism; the prisoner has made
25 realistic plans for release or developed marketable skills; and positive institutional
behavior.  15 Cal. Code Regs. § 2402(d).
26    "Regardless of the length of time served, a life prisoner shall be found
unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an
27 unreasonable risk of danger to society if released from prison."  15 Cal. Code Regs. §
2402(a).
28

12

1  under California law.  Moreover, the fact that "some evidence" supported the BPH's

2  decision defeats petitioner's claim that the BPH's decision was based on an anti-parole

3  policy.

4      Accordingly, based on its own independent review of the record, the Court finds

5  and concludes that the California courts' decisions rejecting petitioner's first through

6  fifth claims neither were contrary to nor involved an unreasonable application of clearly

7  established federal law.

8

9  **B.**    **The sixth claim alleged in the Petition is not cognizable on federal habeas**

10     **review.**

11      In the sixth claim alleged in the Petition, petitioner contends that his right to due

12  process was violated because the BPH's decision to defer petitioner's next parole

13  hearing for two years was not supported by evidence that petitioner could not be found

14  suitable for parole in one year.  According to petitioner, the BPH has improperly adopted

15  15 Cal. Code Regs. § 2270(d), which permits it to "offset subsequent hearing for more

16  than one year based on the same criteria relevant to an inmate's unsuitability for parole,

17  rather than on criteria relevant to the issue of whether the inmate can satisfy parole

18  requirements by one year hence."  (Petition at 29-30; Traverse at 15).

19      The Court concurs with respondent that petitioner's claim solely involves the

20  application and/or interpretation of state law, and consequently, it is not cognizable on

21  federal habeas review.  See 28 U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 67-68,

22  112 S.Ct. 475, 116 L.Ed.2d 385 (1991) ("In conducting habeas review, a federal court is

23  limited to deciding whether a conviction violated the Constitution, laws, or treaties of the

24  United States."); Smith v. Phillips, 455 U.S. 209, 221, 102 S.Ct. 940, 71 L.Ed.2d 78

25  (1982) ("A federally issued writ of habeas corpus, of course, reaches only convictions

26  obtained in violation of some provision of the United States Constitution."); Langford v.

27  Day, 110 F.3d 1380, 1389 (9th Cir.)("We accept a state court's interpretation of state law,

28  . . . and alleged errors in the application of state law are not cognizable in federal habeas

13

corpus."), <u>cert.</u> <u>denied</u>, 522 U.S. 881 (1997).  The Court notes that petitioner does not even purport to be alleging his claim as a federal constitutional claim in the Petition, or to be relying on any federal law in support of his claim.  The Court further notes that petitioner did not even purport to be alleging his claim as a federal constitutional claim in any of his state habeas petitions.  (<u>See</u> Lodgment No. 4 at 40-41, No. 6 at 40-41, No. 8 at 36-37).  The fact that petitioner may be attempting to characterize his claim as federal constitutional claim is not sufficient to render it such.  <u>See</u>, <u>e.g.</u>, <u>Poland v. Stewart</u>, 169 F.3d 573, 584 (9th Cir.), <u>cert.</u> <u>denied</u>, 525 U.S. 825 (1999); <u>Cacoperdo v. Demosthenes</u>, 37 F.3d 504, 507 (9th Cir. 1994), <u>cert.</u> <u>denied</u>, 514 U.S. 1026 (1995).

## VI. <u>RECOMMENDATION</u>

For the reasons discussed above, it is recommended that the court issue an Order: (1) approving and accepting this Report and Recommendation; and (2) denying the petition and dismissing this action with prejudice.

DATED: <u>October 31, 2007</u>

/ s /

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE

NOTICE

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in the Local Rules Governing the Duties of the Magistrate Judges and review by the District Judge whose initials appear in the docket number.  No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.